**In re Anonymous No. 18 D.B. 78**

Disciplinary Board Docket no. 18 D.B. 78.

HENRY, *Chairman*, April 8, 1980—Pursuant to Pa.R.D.E. 208(d), the Disciplinary Board of the Supreme Court of Pennsylvania (board), submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF PROCEEDINGS

On December 1, 1977, respondent, [ ], was convicted by a jury in the United States District Court for the [ ] District of Pennsylvania on 14 counts of violating the Act of August 1, 1968, 82 Stat. 598, 15 U.S.C.A. §1717 (making material untrue statements in property reports filed with HUD pursuant to the Interstate Land Sales Full Disclosure Act); six counts of violating the Act of August 1, 1968, 82 Stat. 591, 15 U.S.C.A. §1703 (sale of lots employing a scheme to defraud); and 12 counts of violating the Act of June 25, 1948, 62 Stat. 763, as amended, 18 U.S.C.A. §1341 (mail fraud). All of the charges related to respondent's activities as one of the developers of a vacation home project in [ ]. On January 6, 1978, the Honorable [ ] sentenced respondent to concurrent four year terms of imprisonment on each charge and to pay fines totaling $11,200. On March 23, 1979, the Third Circuit Court of Appeals affirmed the convictions and respondent commenced serving his sentence at the Federal Prison Camp at [ ] on May 7, 1979. On May 25, 1979, your honorable court entered an order suspending respondent from the practice of law in Pennsylvania and directed this board to continue its formal proceeding to determine the extent of final discipline to be imposed.

On May 23, 1979, a petition for discipline was filed setting forth the convictions and alleging that

respondent's actions constituted violations of D.R. 1-102(A)(4), (5) and (6) (conduct involving dishonesty, fraud, deceit, or misrepresentation; prejudicial to the administration of justice; and adversely reflecting on fitness to practice law). On June 18, 1979, the matter was referred to hearing committee [ ]. A hearing was held on September 5, 1979, at which time respondent was represented by [ ], Esq. Following the transcription of the record and submission of briefs, the hearing committee filed its report on December 20, 1979, recommending that respondent be suspended for a period of four years retroactive to May 25, 1979. Both Disciplinary Counsel and counsel for respondent filed exceptions to the report, the former arguing that disbarment would be the proper discipline and the latter urging that a two year suspension was appropriate under the circumstances. The matter was then referred to this board for review and recommendation.

## II. DISCUSSION

Pa.R.D.E. 214(b) provides: "A certificate of a conviction of an attorney for such a crime [one punishable by imprisonment for one year or upward] shall be conclusive evidence of the commission of that crime in any disciplinary proceeding instituted against the attorney based upon the conviction." Therefore, our sole function is to determine what, if any, disciplinary rules were violated and to recommend a form of discipline. The hearing committee concluded, and respondent does not contest, that his conduct involved dishonesty, fraud, deceit or misrepresentation, was prejudicial to the administration of justice, and adversely reflected upon his fitness to practice law as charged

in the petition for discipline. The only dispute is with respect to the discipline to be imposed.

Respondent, [ ], graduated from the [ ] Law School in 1953. From November 1955 to March 1961, he was an Assistant U.S. Attorney for the [ ] District of Pennsylvania. He was appointed by Governor [ ] to serve as Chief Counsel to the [ ] Commission of Pennsylvania in July of 1963 and served in that capacity until January 1968. From January 1968 through 1972, he acted as a Workmen's Compensation Referee. He also actively participated as a volunteer in many local civic organizations. The record establishes that until he became involved in the [ ] real estate project, respondent enjoyed an excellent reputation with regard to his professional ability and character.

In the early 1970's, respondent became one of the founders of a corporation known as [ ], whose purpose was to develop and sell lots in a vacation home project known as [ ] in [ ] County, Pennsylvania. His initial intention was to act as legal counsel and investor but he subsequently became its president and chief executive officer. Ultimately his full time was devoted to this project and his private law practice became dormant. The [ ] project involved over 1300 lots which were to be developed in a series of stages. It was intended that the subsequent expansion and development of the project would be financed through the sale of lots in the initial phases. Unfortunately, the scheduled time for the sale of the first lots coincided with a general economic recession and shortage of gasoline which seriously affected the market for the sale of vacation homes. The problem was exacerbated by the fact that the corporation had hired two unscrupulous salesmen

who absconded with the proceeds from the sale of some of the lots and created fictitious sales generating commissions for themselves which were paid by the company and never offset by sales revenues. As a result of these circumstances, the corporation was without the funds to provide amenities such as a heated swimming pool, tennis courts, on-site sewage disposal plant and paved streets at the time they had been promised.

Faced with this situation, respondent filed five separate statements with the Department of Housing and Urban Development during the period from February 1973 to March 1975 which contained inaccurate statements as to when some or all of the four amenities described above would be provided. From May 26, 1973 to May 18, 1975, he sold six lots based upon false promises with respect to these improvements. During the same period he mailed six form letters to purchasers of lots in [    ] designed to induce them to continue to make payments on the lots they had already purchased, purchase additional lots, or refrain from seeking legal redress. These reports, sales and letters formed the basis for his conviction and sentence.

Respondent testified that his actions were not taken for benefit of personal gain but only in order to keep the project alive since he always had the hope that he would be able to provide the tennis courts, pool, streets and sewage treatment facility from the proceeds from the sale of lots if he could keep the development going and not be forced to close it down. Indeed, the record establishes that respondent worked without compensation and invested funds of his own in an effort to salvage the operation. It also seems clear, however, that in the

event that his hopes were realized, he would not only recoup his investment but make a profit from the venture.

In urging this board to recommend a period of suspension not to exceed two years, counsel for respondent has pointed out that respondent's illegal activities were not related to his practice of law but arose from an entirely separate enterprise; he has been sentenced to jail for four years and fined $11,200; he has lost his home and all of his financial resources; his family has been embarrassed and humiliated by the publicity attending his trial, conviction and sentence which has been magnified by the respected position they held in their community prior to this incident; and that respondent always intended to provide the amenities promised and his actions were the result of an error in judgment in an effort to keep the project viable for the benefit of all prior purchasers of lots as well as himself.

The Office of Disciplinary Counsel, on the other hand, argues that respondent should be disbarred. In support of this position, they point out that his conviction of 32 felonies is egregious and detrimental to the public confidence in the legal profession and judicial system. They also urge that a period of suspension that coincides with the term of incarceration could give the public the impression that we are fulfilling our disciplinary obligations by merely coordinating the extent of discipline imposed to the sentence imposed by Judge [   ]. Counsel asserts that the public does not need protection from respondent while he is in jail but only when he is released.

In Maryland State Bar Association, Inc. v. Ag-

new, 271 Md. 543, 550, 318 A. 2d 811, 815 (1974), Judge Digges, of the Court of Appeals of Maryland, stated: "The professional ethical obligations of an attorney, as long as he remains a member of the bar, are not affected by a decision to pursue his livelihood by practicing law, entering the business world, becoming a public servant, or embarking upon any other endeavor. If a lawyer elects to become a business man, he brings to his merchantry the professional requirements of honesty, uprightness and fair dealing." When an individual accepts the privileges of becoming a member of the legal profession, he accepts the responsibility for the high standard of conduct that the public has a right to expect. These ethical standards apply to all phases of his life and not merely to those activities directly related to the practice of his profession. Your honorable court has not hesitated to accept the recommendations of this board that attorneys be disbarred for conduct unrelated to their practice of law. See, e.g., In re Anonymous No. 22 D.B. 76, 4 D. & C. 3d 685 (1977), and Office of Disciplinary Counsel v. Troback, 477 Pa. 318, 383 A. 2d 952 (1978).

On the other hand, your honorable court has indicated that disbarment is not mandatory where there has been a conviction of a felony. A four year suspension was imposed in In re Anonymous No. 53 D.B. 75, 4 D. & C. 3d 694 (1977). That case involved mail fraud convictions related to the respondent's legal practice. The mitigating circumstances were virtually identical to the case at bar. More recently, In re Anonymous No. 21 D.B. 78, 10 D. & C. 3d 365 (1978), your honorable court concurred in the three year suspension recommended

by this board in a case involving theft by deception coupled with a similiar, substantially unblemished record of professional and public service.

In the opinion of this board, a particular discipline should not be imposed in order to augment what may be considered to be a lenient sentence or dilute what may be considered to be a harsh sentence. Further, we are of the opinion that the period of suspension should be related solely to what is deemed to be necessary for the protection of the public and the integrity of the court and legal profession and be consistent with that imposed in similiar cases in the past. The fact that the period of suspension may run concurrently with a period of incarceration is not controlling. It might be noted in this regard, however, that respondent will be eligible for parole after serving one-third of his sentence.

After reviewing the record and the excellent briefs and arguments of counsel for respondent and the Office of Disciplinary Counsel and considering the discipline that has been imposed in substantially similiar cases in the past, it is the unanimous opinion of this board that disbarment is not warranted in the instant case. On the other hand, it is clear that a substantial period of suspension is required. The hearing committee considered the same briefs and arguments and had the advantage of observing respondent, his wife and several of the character witnesses as they testified. This opportunity provides them with an additional dimension not available to anyone else in the disciplinary process. This board, therefore, accepts the recommendation of the hearing committee of a four year suspension retroactive to May 25, 1979 and adopts it as its own recommendation to your honorable court.

## III. RECOMMENDATION

For the reasons set forth above, the Disciplinary Board recommends to your honorable court that respondent [   ] be suspended for a period of four years retroactive to May 25, 1979 with the right to apply for reinstatement pursuant to Rule 218 six months prior to the end of said period of suspension and that respondent shall comply with all of the provisions Pa.R.D.E. 217 and sections 91.91-97 of the Rules of the Disciplinary Board.

Mr. McDonnell did not participate in the consideration or decision of this proceeding.

## ORDER

O'BRIEN, *J.*, And now, April 22, 1980, the recommendation of the Disciplinary Board of the Supreme Court of Pennsylvania dated April 8, 1980, is rejected; and it is ordered, that the said [respondent], be, and he is forthwith disbarred in accordance with Pa.R.D.E. 204(1) from the practice of law in this court and in all the courts under its supervisory jurisdiction and until further order of the Supreme Court.

Mr. Chief Justice Eagen did not participate in the consideration or decision of this matter.