695 A.2d 405

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

v.

**Daniel W. CHUNG, Respondent.**

Supreme Court of Pennsylvania.

Argued Oct. 15, 1996.

Decided May 20, 1997.

Harold E. Ciampoli, Jr., Audubon, for Disciplinary Counsel.

Samuel C. Stretton, for Respondent.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

### OPINION OF THE COURT

NEWMAN, Justice.

Respondent Daniel W. Chung has filed exceptions to the Disciplinary Board's report recommending his disbarment.

On August 24, 1994, this Court temporarily suspended Respondent from practice based on his July 15, 1993 guilty plea in federal court on five counts of making false statements to a federally insured financial institution[1]. Because of his convictions, the District Court imposed concurrent sentences of twelve months and one day for each count and ordered Respondent to pay restitution in the amount of $106,000.00, along with a fine and assessment totalling $10,250.00.

On February 17, 1994, the District Court committed the Respondent to the Bucks County Rehabilitation Center, where he remained until released from custody on January 13, 1995.

The Office of Disciplinary Counsel filed a Petition for Discipline against Respondent. On April 10, 1995, a three member hearing committee held a hearing on the petition. Respondent and the Office of Disciplinary Counsel stipulated to a number of facts, including the following:

1. The federal government dropped twelve additional counts of false statements and three counts of mail fraud.

*Stipulation of Facts*

. . .

4. On June 30, 1993, the United States Attorney's Office charged Respondent with seventeen counts of making false statements to a federally insured financial institution, in violation of 18 U.S.C. § 1014, and three counts of mail fraud, in violation of 18 U.S.C. § 1341.

5. The counts based on 18 U.S.C. § 1014 arose from Respondent's submission of false tax returns and false financial information to Ukrainian Savings and Loan Association ("Ukrainian") between March 1986 and September 1988 to obtain seventeen loans for Respondent's clients.

6. The counts based on 18 U.S.C. § 1341 involved the submission of false financial information on three occasions between 1990 and January 1991 to Traveler's Mortgage Services, Inc. (later known as G.E. Capital Mortgage Services, Inc., "G.E. Capital") to obtain loans for clients. Respondent did not plead guilty to the 18 U.S.C. § 1341 counts.

. . .

9. The basis of the criminal charges to which Respondent pleaded guilty was his assistance as an accountant in helping his clients obtain loans from Ukrainian.

10. Respondent, in the course of his assistance, knowingly prepared fictitious tax returns of his clients to submit to the Savings and Loan in an effort to deceive the loan company.

. . .

17. Although Respondent did not plead guilty to [counts related to the loss incurred by G.E. Capital], for purposes of sentencing he agreed that he aided in this fraud by providing false documentation to the G.E. Capital loan officer.

19. Respondent . . . agreed with the government that the relevant loss for purposes of assessing restitution was $76,000.00 suffered by Ukrainian and $30,000.00 loss by G.E. Capital. . . .

. . .

21. Respondent forfeited to the government $10,081.00 in professional fees that he received for obtaining all loans from Ukrainian listed in the criminal information.

Stipulation of Fact, April 10, 1995, at 1–3.

The hearing committee noted that although Respondent's acts involved fraud, deceit and dishonesty, his motivation was to secure loans for other members of the Korean community. Although Respondent helped his clients to obtain loans inappropriately, and charged a fee for his services, he did not benefit from the loans granted to his clients. The hearing committee recognized that most of Respondent's clients who secured loans were paying them back in a timely manner. While this does not excuse Respondent's actions, the hearing committee determined that it demonstrates that Respondent's state of mind was not to defraud the savings and loan association.

The hearing committee concluded that Respondent violated the following Rules of Professional Conduct (RPC) and Disciplinary Rules (DR):

1. RPC 4.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact to a third person while representing a client);

2. RPC 4.1(b) (prohibiting a lawyer from knowingly failing to disclose a material fact to a third person when disclosure is necessary to avoid aiding or abetting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6);

3. RPC 8.4(b) (it is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects);

4. RPC 8.4(c) (it is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice);

5. DR1–102(a)(3) (a lawyer shall not engage in illegal conduct involving moral turpitude);

6. DR1–102(a)(4) (a lawyer shall not engage in conduct involving dishonesty, fraud, deceit, or misrepresentation);

7. DR1–102(a)(6) (a lawyer shall not engage in conduct that adversely reflects on his fitness to practice law);

8. DR7–102(a)(5) (in his representation of a client, a lawyer shall not ... knowingly make a false statement of law or fact); and

9. DR7–102(a)(3) ( a lawyer shall not conceal or knowingly fail to disclose that which he is required by law to reveal).

Considering all of the evidence, including the undisputed testimony that Respondent is a man of character and good standing in the community, the Committee recommended a three-year suspension beginning August 24, 1994.

The Office of Disciplinary Counsel filed exceptions, and the Disciplinary Board held oral argument on September 21, 1995. By report dated February 8, 1996, the Board recommended that Respondent be disbarred retroactive to August 24, 1994. Respondent filed a petition for review with this Court, and we granted oral argument.

■ In attorney discipline matters we exercise *de novo* review, and we are not bound by the findings and recommendations of the hearing committee or the Board, though we give them substantial deference. *Office of Disciplinary Counsel v. Raiford*, 546 Pa. 628, 687 A.2d 1118 (1997).

■ Here, the Board recognized that Respondent presented impressive character witnesses and that he demonstrated remorse for his actions. Nevertheless, the Board took the position that "[n]o amount of character testimony will overcome the fact that Respondent knowingly defrauded a financial institution in his effort to assist his clients." Report and Recommendation of the Board, February 8, 1996 at 16. The

Board also based its recommendation of disbarment on this Court's decision in *Office of Disciplinary Counsel v. Holston,* 533 Pa. 78, 619 A.2d 1054 (1993). In *Holston,* an attorney signed a judge's name to a divorce decree, and when the judge later asked him the identity of the person who prepared the order, he answered that he did not know. After meeting with counsel, the attorney informed the court that he was responsible for forging the judge's name. We noted that the attorney acted dishonestly by committing forgery and lying to the court, and that his "conduct demonstrates a callous disregard for the very integrity of the judicial process and calls for the most severe sanction." *Id.* at 83, 619 A.2d at 1056. In the instant matter, the Board determined that the Respondent's behavior was more egregious than Holston's because it involved a course of dishonest conduct rather than an isolated incident. Based on *Holston,* the Board concluded that dishonesty requires disbarment.

While this Court certainly does not condone acts of dishonesty, we have declined to adopt a *per se* rule requiring disbarment for specific acts of misconduct. In *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983), this Court refused to adopt a rule requiring disbarment of an attorney who commingled or converted clients' funds or improperly shifted funds in escrow accounts. Instead, we held that considering the gravity of disciplinary proceedings, we must exercise our discretion by considering and evaluating all relevant facts. In this case, the Board considered the nature of the Respondent's convictions and concluded that disbarment was the only appropriate remedy. While we must give due consideration to the Respondent's offenses, "we are also concerned that each case, subject as it is to our *de novo* review, be decided on the totality of facts present." *Id.* at 280, 472 A.2d at 190.

Our review of the record indicates that Respondent became a certified public accountant in 1980 and a member of the bar in 1988. As an accountant and lawyer, Respondent had a significant history of service to members of Philadelphia's Korean community. He aided non-profit organizations in the

Asian community by providing free professional services, held seminars regarding accounting and legal issues and served as a mediator between Korean churches and local businesses. At the disciplinary hearing, the Respondent testified that the reason he inflated his clients' incomes on loan applications was to assist members of the Korean community to obtain loans. He admitted his misconduct during the disciplinary hearing and showed remorse for his actions. He also presented testimony from eight witnesses who testified to his reputation as a peaceful and law-abiding citizen and as a truthful person.

"The [disciplinary] system is designed to determine whether misconduct has occurred and to what extent that misconduct indicates unfitness to practice law." *Lucarini* at 281, 472 A.2d at 190. To that end, we have examined not only the nature of the Respondent's misconduct, which in this case is most serious, but also the testimony of the Respondent and others regarding his extensive involvement in the community, excellent reputation and remorse for his actions. After considering the totality of the facts, and mindful that eight years have passed since Respondent's last misdeed, we disagree with the Board's recommendation of disbarment. Based on our independent balancing of the nature of the conviction and the mitigating evidence presented, we impose a five-year suspension retroactive to August 24, 1994. It is further ordered that he shall comply with the provisions of Pa.R.D.E. 217 and that he shall pay costs, if any, to the board pursuant to Pa.R.D.E. 208(g).

CASTILLE, J., files a dissenting opinion.

CASTILLE, Justice, dissenting.

The majority imposes a five-year retroactive suspension on the grounds that despite respondent's illegal activities, he is extensively involved in the Korean community, has an excellent reputation (notwithstanding his pattern of illegal conduct) and shows remorse for his actions. Because I believe that respondent's criminal activities demonstrate that he is not fit to practice law in this Commonwealth, I respectfully dissent as I believe disbarment is the only appropriate remedy.

The majority focuses on respondent's "benevolent" activities in the Korean community in reading its ruling.[1] However, the purposeful, fraudulent acts at issue occurring over approximately a *five year* period caused literally millions of dollars to be at risk and, in fact, caused the financial institutions who were fraudulently induced to make the loans to suffer losses in the amount of $106,000.00.[2] Further, although respondent alleges that he was trying to help members of the Korean community by securing loans and by rendering legal services at a low fee,[3] he failed to act responsibly as an attorney and conducted his professional duties in an illegal fashion violating several rules of professional conduct. This is not the kind of lawyering that any community should tolerate. This purposeful conduct demonstrates a callous disregard for our legal system and in my opinion renders the attorney unfit to practice law.[4]

If this was an isolated incident, perhaps a more lenient sanction such as that now being imposed by the majority

1. However, this Court has held that:
   [A] Respondent's involvement in professional, civic and religious activities, while laudable, is not relevant to our basic inquiry, Respondent's fitness to practice law in this Commonwealth. Moreover, without denigrating Respondent's extracurricular endeavors, we note that such activities are widely employed as a means of professional advancement.
   *Office of Disciplinary Counsel v. Stern*, 515 Pa. 68, 83, 526 A.2d 1180, 1187 (1987) (holding disbarment was proper where the attorney helped a client illegally pay a union official).

2. In the criminal case against respondent, the District Court ordered him to pay restitution in the amount of $106,000.00 to those financial institutions.

3. Respondent charged his clients $300.00 for each fraudulent transaction, and personally profited in excess of $10,000.00 for his criminal conduct.

4. This Court has held that:
   In choosing an appropriate punishment, this is no doubt that dishonesty on the part of an attorney establishes his unfitness to continue practicing law. Truth is the cornerstone of the judicial system; a license to practice law requires allegiance and fidelity to truth. *Office of Disciplinary Counsel v. Grigsby*, 493 Pa. 194, 200, 425 A.2d 730, 733 (1981) (holding disbarment is an appropriate remedy for false swearing).

would be warranted. However, in this case, respondent was charged with *seventeen* counts of making false statements to a federally insured financial institution and three counts of mail fraud.[5] *See In re Anonymous No. 18 D.B.* 78, 14 Pa. D. & C.3d 759 (1980) (this Court disbarring an attorney who was convicted of multiple counts of felony fraud unconnected to the practice of law, despite the Disciplinary Board's recommendation of four-years retroactive suspension); *In re Anonymous No. 73 D.B.* 84, 37 Pa. D. & C.3d 98 (1985) (this Court disbarring an attorney who defrauded the government by submitting false claims). Had his acts not been discovered, his behavior would have continued benefiting him personally and professionally, and jeopardizing others financially. Accordingly, I must dissent as I believe that the five-year suspension is far too lenient. Instead, I believe that respondent should be disbarred because his conduct clearly demonstrates an unfitness to practice law.

**5.** Significantly, the Assistant United States Attorney explained, at respondent's sentencing hearing, that he could have produced over fifty additional loans in which respondent produced fraudulent documents. However, he chose not to produce the additional documents because "no jury in the world would have any question as to [respondent's] guilt" after charging him with twenty illegal acts involving fraud.