**In re Anonymous No. 114 D.B. 98**

Disciplinary Board Docket no. 114 D.B. 98.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

SCHULTZ, *Member,* December 5, 2000—

## REPORT AND RECOMMENDATIONS OF THE DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA

Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

Petitioner, Office of Disciplinary Counsel, filed a petition for discipline against respondent, [ ], on October 14, 1998. The petition contained three charges. Charge I alleged that respondent commingled client and personal funds in her accounts. Charge II alleged that respondent

neglected a client's divorce matter. Charge III alleged that respondent neglected a client matter in a civil action. This charge was withdrawn at the pre-hearing conference due to the unavailability of a witness. Respondent filed an answer to the petition for discipline on February 16, 1999.

Hearings were held on June 22, 1999, and July 14, 1999, before Hearing Committee [ ] comprised of Chair [ ], Esquire, and Members [ ], Esquire, and [ ], Esquire. Petitioner was represented by [ . ], Esquire. Respondent did not appear.

The committee filed a report on November 1, 1999, and found that respondent violated the Rules of Professional Conduct as charged in the petition. The committee recommended a suspension for a period of three years.

No briefs on exceptions were filed by the parties.

This matter was adjudicated by the Disciplinary Board at the meeting of February 2, 2000.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 3710, One Oxford Centre, Pittsburgh, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent was born on April 20, 1960, and was admitted to practice law in the Commonwealth of Pennsylvania on June 10, 1988.

(3) Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania. Pa.R.D.E. 201(a)(3).

(4) By order dated December 3, 1997, effective January 2, 1998, the Supreme Court of Pennsylvania transferred respondent to inactive status pursuant to Pa.R.D.E. 219.

### Charge I: Commingling, Conversion and Fiduciary Matters in General

(5) From July 28, 1992, to July 18, 1996, respondent maintained an account at [A], account no. [   ] (old account no. [   ] ), said account captioned "[respondent] escrow account [   ]" ("[B] account").

(6) From June 28, 1994, to January 31, 1995, respondent maintained an account at [C] Bank, [   ], [   ] Region, account no. [   ], said account captioned "[respondent] escrow account [   ]" ("[D] account").

(7) On her annual attorney registration statements for fiscal years 1993-1994, 1994-1995, and 1995-1996, and on an application for resumption of active status 1996-1997 (respondent used this form even though her registration status was "active"), respondent failed to disclose the financial institutions in which respondent held fiduciary funds and certified she was in compliance with R.P.C. 1.15.

(8) Respondent deposited personal funds in both the [D] account and the [B] accounts.

### A. The [E] Matter

(9) On September 12, 1994, [E], an employee of [F] Inc., suffered a work-related injury as a result of the al-

leged negligence of a third party, [G]. [F's] compensation carrier was [H].

(10) Thereafter, [E] retained respondent to represent him in pursuing third-party claims against [G], with respondent to receive a fee of 33 1/3 percent of any recovery.

(11) On March 28, 1995, respondent and [H] entered into an agreement whereby respondent would receive from [H] a fee of $500 as compensation for negotiating a settlement of [H's] statutory subrogation lien under 77 Pa.C.S. §671.

(12) Thereafter, respondent negotiated a settlement, in the amount of $7,000, of [E's] claims against [G] through its insurer, [I].

(13) On July 5, 1995, respondent and [H] agreed that [H] would receive $2,166 in settlement of the subrogation lien, and respondent confirmed the terms of the settlement by letter of that date.

(14) On July 12, 1995, respondent deposited into the [B] account a $7,000 settlement check received from [I] after obtaining [E's] endorsement.

(15) Respondent prepared a distribution sheet for [E's] signature which showed that the funds were to be distributed as follows: $2,501 to [E]; $1,666 to [H]; $2,833 to respondent ($2,333, one-third of the recovery, plus $500 for settling [H's] lien). On or about July 13, 1995, respondent forwarded checks to [E] and [H] in said amounts.

(16) Thereafter, respondent wrote checks which reduced the balance in the [B] account to an amount less than the amount of the check forwarded to [H], resulting in respondent's account falling "out of trust."

(17) On or about July 18, 1995, [H] negotiated check no. 1654 which was returned to [H] on July 24, 1995, for insufficient funds.

(18) Between July 28, 1995, and April 4, 1996, [H's] Workers' Compensation Subrogation Unit Case Manager, [J], telephoned respondent on numerous occasions and requested that a certified replacement check be issued.

(19) On July 28, 1995, and April 4, 1996, respondent received [J's] messages, telephoned [H] several times and advised that she would send a replacement check.

(20) Thereafter, respondent failed to contact [J].

(21) On May 7, 1996, [J] telephoned the number to respondent's office, but respondent's phone had been temporarily disconnected.

(22) By letter dated May 7, 1996, sent to respondent by regular and certified mail, [J] demanded payment within 30 days.

(23) [H] retained [K], Esquire, who sent a letter to respondent demanding payment within two weeks.

(24) Respondent received the letters but did not respond.

(25) In late August 1996, respondent relocated her practice to her residence at [ ]. ([L] residence address).

(26) Respondent failed to advise [H] of her new address or to take any action to reimburse [H].

(27) By DB-7 letter dated March 21, 1997, petitioner put respondent on notice of the allegation of failure to distribute the sum due [H].

(28) In response to the DB-7 letter, respondent asserted that the check issued to [H] had been returned due to the deduction of a bank fee and that [J] could have contacted respondent by contacting attorney registration.

(29) Under cover of a letter dated March 25, 1997, to [J], respondent forwarded one money order made payable to [H] in the amount of $1,000 and a second money order made payable to [H] in the amount of $166. Said checks failed to fully satisfy the monies due [H].

## Charge II: The [M] Matter

(30) In October 1994, respondent agreed to represent [M] in obtaining a divorce for a fee of $250, which was paid by [M].

(31) Respondent failed to deposit the fee into an escrow account until lawfully disbursed or earned.

(32) Although respondent told [M] that his divorce would be finalized in six months, she failed to take any action to secure a divorce.

(33) Between May 1995 and June 1997, [M] telephoned respondent on several occasions. On each occasion, respondent advised [M] that the divorce would be finalized within a short period of time of the call.

(34) In or about 1996, respondent contacted [M] and advised him that she was ill and decreasing her workload, that she was no longer maintaining an office in [   ] but doing legal work at home, and she provided him with an 800 telephone number. Further, respondent represented to [M] that two complaints had been filed on his behalf.

(35) On June 17, 1997, [M] telephoned the 800 number and left a message for respondent. [M] telephoned that same number the following day but the telephone had been disconnected.

(36) On June 19, 1997, in an effort to locate respondent, [M] went to respondent's [   ] office address. Respondent was no longer renting the premises.

(37) Unaware of respondent's whereabouts, on or about June 26, 1997, [M] filed a disciplinary complaint and was provided with respondent's [L] residence address.

(38) By letter dated July 21, 1997, [M] requested respondent advise him of the status of his divorce matter and provide proof that respondent had filed a complaint in divorce.

(39) Respondent received the letter sent by regular mail.

(40) On August 1, 1997, respondent mailed a letter dated July 15, 1997, to [M] advising that the divorce complaint was not filed and "all legal matters in [respondent's] possession will be filed by September 1, 1997. . . ."

(41) On or about August 29, 1997, [M] sent a letter requesting that respondent send proof of filing to his new address.

(42) Respondent did not respond to this letter.

(43) In response to a DB-7 letter dated September 11, 1997, respondent, inter alia, alleged that [M] owed her money and represented she would complete the matter and send copies of filed documents and an additional bill.

(44) By undated letter postmarked March 23, 1998, to petitioner, respondent again represented that a complaint in divorce would be filed.

(45) Respondent did not file a divorce complaint.

(46) In or about May 1998, [M] retained and paid $160 to [N], Esquire, who filed a divorce complaint in [ ] County on May 14, 1998, and obtained a final decree in divorce on July 30, 1998.

(47) Respondent has no record of discipline.

## III. CONCLUSIONS OF LAW

By her actions as set forth above, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 1.3—A lawyer shall act with reasonable diligence and promptness in representing a client.

(2) R.P.C. 1.4(a)—A lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information.

(3) R.P.C. 1.4(b)—A lawyer shall explain a matter to the extent necessary to permit the client to make informed decisions regarding the representation.

(4) R.P.C. 1.15(a)—A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.

(5) R.P.C. 1.15(b)—Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. A lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(6) R.P.C. 1.16(a)(1)—A lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if the representation will result in violation of the rules of professional conduct or other law.

(7) R.P.C. 1.16(a)(2)—A lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if the lawyer's physical or mental condition materially impairs the lawyer's ability to represent the client.

(8) R.P.C. 8.4(b)—It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

(9) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(10) R.P.C. 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

(11) Pa.R.D.E. 203(b)(3) via (former) Pa.R.D.E. 219(d)(1)(iv)—which stated that on or before July 1 of each year all persons required by this rule to pay an annual fee shall file with the administrative office a signed statement on the form prescribed by the office setting forth a statement that the attorney is familiar and in compliance with Rule 1.15 of the Pennsylvania Rules of Professional Conduct regarding the handling of funds and other property of clients and others.

## IV. DISCUSSION

This matter comes before the board on a petition for discipline charging respondent with violation of numerous Rules of Professional Conduct based on mismanagement of client funds and neglect of client matters. Hearings were held on June 22 and July 14, 1999. Re-

spondent did not appear. Petitioner presented evidence of service on respondent. After unsuccessful attempts to make personal service of the petition for discipline, petitioner, on December 15, 1998, effectuated mail service pursuant to Pa.R.D.E. 212 (substituted service). On February 10, 1999, petitioner made additional attempts to make personal service of the petition. On February 16, 1999, respondent filed an answer. Respondent was served by mail with notice of the disciplinary hearing dates.

Petitioner has the burden of proving ethical misconduct by a preponderance of the evidence that is clear and satisfactory. *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 425 A.2d 730 (1981). Review of the record indicates that petitioner met its burden of proof. The evidence shows that respondent commingled funds in both of her fiduciary accounts; wrote checks that were returned for insufficient funds; failed to preserve complete records of fiduciary funds; failed to disclose the names of financial institutions in which client funds were held; converted and/or kept for personal use funds belonging to clients or medical providers; and failed to respond to inquiries from clients. Respondent further failed to deposit unearned and filing fees into a trust account and neglected a divorce matter over the course of three years.

After finding that respondent violated the Rules of Professional Conduct, the dispositive issue before the board is the measure of discipline to be imposed as a result of this misconduct. The board must consider all aggravating and mitigating circumstances present and recommend a sanction that best effectuates the purpose of this Commonwealth's system of lawyer discipline,

which is to assess the fitness of the lawyer and to protect the public and the integrity of the bar.

Respondent was an unwilling participant at best in the disciplinary process. Although she responded to the DB-7 letter of inquiry initiated by petitioner, she did not fully respond to requests for records, sending only selected materials to petitioner. Respondent subsequently ignored a subpoena for client records. Respondent later relocated to Louisiana without providing a current address to the lawyer assessment office, as she was obligated to do. Respondent filed an answer to the petition for discipline that was sarcastic and vulgar in nature and totally inappropriate. Respondent made allusions to health problems in her answer to the petition and in her supplemental response to the DB-7 letter, but did not substantiate her claims. Respondent did not appear at the pre-hearing conference held on March 26, 1999, or at the disciplinary hearings held in June and July of 1999.

The hearing committee recommended a suspension for a period of three years. The committee considered respondent's overall misconduct relating to her maintenance and administration of fiduciary funds, which included her conversion of funds and failure to keep full and complete client financial records. Respondent performed her duties as an attorney with an air of neglect and carelessness. This same philosophy permeated respondent's attitude toward the disciplinary system. The only mitigating circumstance present in this matter was respondent's lack of a prior record.

The board is in agreement with the committee's recommendation of a three-year suspension. The case law supports a three-year suspension. In general, although

there is no per se rule for discipline in conversion cases, where the conversion is intentional or is accompanied by misrepresentation or deception, the discipline imposed is a suspension of at least one year. Mishandling of client monies is a serious breach of trust which cannot be tolerated. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983); *Office of Disciplinary Counsel v. Lewis,* 493 Pa. 519, 426 A.2d 1138 (1981).

In the matter of *In re Anonymous No. 67 D.B. 92,* 27 D.&C.4th 202 (1994), an attorney deposited funds recovered on behalf of a client into his escrow account, and then converted the funds by drawing at least 11 checks to pay personal and business expenses. After the client initiated a disciplinary investigation, the attorney refused to produce his financial records and client files and honor a subpoena for their production. The attorney did not appear at the disciplinary hearing. This attorney had no prior record. The Supreme Court imposed a three-year suspension.

The facts of the case at bar are quite similar to the cited case. The underlying misconduct engaged in by respondent is aggravated by her behavior subsequent to petitioner's investigation of the charges against her. Respondent chose to play games with petitioner and ultimately leave the area without a forwarding address instead of facing her disciplinary problems. Her failure to appear at the hearings deprived the hearing committee of the opportunity to hear respondent's version of events and assess her fitness to practice law. The conclusion that must be drawn in the face of this behavior is that respondent is not fit to practice law at this time, nor should the public be deceived that she is competent to solve their legal problems.

For these reasons, the board recommends that respondent be suspended for a period of three years.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, [    ], shall be suspended from the practice of law in the Commonwealth of Pennsylvania for a period of three years.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Member Scaricamazza did not participate in the February 2, 2000 adjudication.

Board Members Nix and Elliott did not participate in the consideration and disposition of this matter.

Board Members Halpern, Iole, Cunningham, Stewart and Peck dissented and would recommend disbarment.

---

## DISSENTING REPORT AND RECOMMENDATION OF THE DISCIPLINARY BOARD OF THE SUPREME COURT OF PENNSYLVANIA

CUNNINGHAM III, *Member,* December 5, 2000— The report and recommendation of the Disciplinary Board is that respondent be suspended from the practice of law for a period of three years.[1] I am writing in dissent to recommend that respondent be disbarred.

---

1. Office of Disciplinary Counsel requested that the Hearing Committee suspend for four years and require a psychological examination to determine respondent's mental competency to practice law. The Hearing Committee recommended a three-year suspension.

The board bases its recommendation on *In re Anonymous No. 67 D.B. 92,* 27 D.&C.4th 202 (1994). However, that case concerns an attorney who victimized one client. The instant case is more like *Office of Disciplinary Counsel v. Passyn,* 537 Pa. 371, 644 A.2d 699 (1994), where this court disbarred an attorney who victimized two clients, as well as lied to her clients, the lawyers fund for client security, and the court.

The Hearing Committee found that respondent in the instant case victimized several clients and engaged in a course of conduct which was dishonest and unprofessional. On July 12, 1995, she deposited a settlement check on behalf of her client [E], and then made out checks to "cash" and for various personal expenses. She knowingly converted funds belonging to her client and others. This resulted in negative balances in her escrow account on 16 occasions.[2] In response to the DB-7 letter she received from Office of Disciplinary Counsel, respondent falsely asserted that she had made good on checks that had been dishonored only because of banking fees.[3] She was evicted from her [  ] law office and relocated to [  ] without notifying the people to whom she owed money, including money she was holding in escrow.[4] She also did not notify attorney registration of her change in address, another fact which she misrepresented in her response to the DB-7 letter.[5] At various times during 1994, respondent converted fiduciary funds belonging to three other clients and several medical providers.[6]

---

2. See Hearing Committee report, findings of fact 11 through 33.
3. See Hearing Committee report, finding of fact 48a.
4. See Hearing Committee report, findings of fact 45 and 48b.
5. See Hearing Committee report, finding of fact 48b.
6. See Hearing Committee report, findings of fact 52 through 56.

Respondent was retained by [M] to represent him in obtaining a divorce. She accepted $250 in cash and gave him a receipt showing "paid in full." She did not deposit the money into her escrow account, although it represented unearned fees and costs. She had promised to file for divorce in [ ] County, but took no action to secure [M's] divorce. She repeatedly lied to him about the status of his matter. In her response to the DB-7 letter dated September 11, 1997, respondent gave false excuses for the delay, falsely alleged that [M] owed her money, and represented that she would complete the matter and send copies of filed documents and an additional bill to [M]. Instead, at a cost of $160, [M] had to hire another lawyer in May 1998 who filed a divorce complaint in [ ] County that same month and obtained a final decree for [M] on July 30, 1998.[7]

At the time of the Hearing Committee report, August 6, 1999, there were eight unsatisfied default judgments against respondent for office rent, office supplies, court reporter services, [ ] business privilege tax, and [ ] net profits tax; these judgments totaled $21,008.89. There was a Commonwealth Department of Revenue tax lien for $811.62.[8]

Respondent submitted an answer to the petition for discipline[9] which the Hearing Committee described as, "frivolous, not in conformance with the requirements of D.B. Rules 89.54(b), threatening in nature and vulgar." [10]

---

7. See Hearing Committee report, findings of fact 57 through 76.

8. See Hearing Committee report, findings of fact 77 and 78.

9. This and her untruthful response to the DB-7 were her only responses. She did not otherwise participate in the process.

10. See Hearing Committee report, finding of fact 79.

The Hearing Committee was being kind in their characterization. In fact, respondent's typed response was five short enumerated sentences. She wrote in part, "don't fuck with my family"; she called her clients "ungrateful pricks"; and concluded with "If for some reason you are staying in touch with me because you like me and want some pussy—too bad—you can't have any!!!!!!!!"

Why would we reinstate this respondent and unleash her on the public again in just three short years?

In *Office of Disciplinary Counsel v. Kanuck,* 517 Pa. 160, 535 A.2d 69 (1987), an attorney's commingling of clients' funds and the borrowing of those funds resulted in a five-year suspension. Misappropriation of client funds is a serious offense that may warrant disbarment. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983); *Office of Disciplinary Counsel v. Knepp,* 497 Pa. 396, 441 A.2d 1197 (1982); *Office of Disciplinary Counsel v. Lewis,* 439 Pa. 519, 426 A.2d 1138 (1981). As the court noted in *Lewis:* "A client must . . . rest assured that any financial transactions carried out on the client's behalf will be scrupulously honest, will be accounted for at the client's request, and will involve full and immediate payment of funds that are due and owing to the client. This public trust that an attorney owes his client is in the nature of a fiduciary relationship involving the highest standards of professional conduct." *Id.* at 529, 426 A.2d at 1143. Although the court has disbarred attorneys who have commingled or improperly shifted funds in escrow accounts, the court has declined to adopt a per se rule requiring disbarment for specific acts of misconduct. *Lucarini.* Instead, the court considers each case individually, evaluating all relevant facts.

*Office of Disciplinary Counsel v. Chung,* 548 Pa. 108, 695 A.2d 405 (1997).

Clearly, respondent's discipline warrants a suspension of anywhere from three years to disbarment. Having reached this decision, we must determine whether any additional factors exist that would warrant disbarment rather than a suspension.

The additional misconduct in the instant case can only be seen as an aggravating factor. In *Office of Disciplinary Counsel v. Holston,* 533 Pa. 78, 619 A.2d 1054 (1993); and, *Office of Disciplinary Counsel v. Grigsby,* 493 Pa. 194, 425 A.2d 730 (1981), it was clearly determined that false statements to a tribunal can result in disbarment. Although respondent's repeated lies to clients and in the disciplinary proceedings standing alone in this case do not mandate disbarment, they are aggravating factors. Combined with respondent's other misconduct, they leave no choice but to recommend that respondent be disbarred.

## ORDER

And now, March 23, 2001, a rule having been entered upon respondent by this court on January 25, 2001, to show cause why she should not be disbarred and no response thereto having been filed, it is hereby ordered that the rule is made absolute, [respondent] is disbarred from the bar of this Commonwealth and she shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.