**Office of Disciplinary Counsel v. Davis**

STOREY, *Member,* November 3, 2006—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On May 13, 2005, the Supreme Court of Pennsylvania entered an order placing Reed James Davis, respondent, on temporary suspension from the practice of law and referring the matter to the Disciplinary Board. Office of Disciplinary Counsel filed a petition for discipline against respondent on May 26, 2005. The petition charged respondent with professional misconduct arising from his conviction of the crimes of delivery of a controlled substance, possession with intent to deliver a controlled substance and possession of a controlled substance. Respondent filed an answer to petition for discipline on June 24, 2005.

A disciplinary hearing was held on November 9, 2005, before a District IV Hearing Committee comprised of Chair David A. Regoli, Esquire, and Members Marie Milie Jones, Esquire, and Thomas S. Talarico, Esquire. Respondent was represented by John E. Quinn, Esquire.

Following the submission of briefs by the parties, the hearing committee filed a report on March 21, 2006 and recommended that respondent be suspended for a period of one year retroactive to May 13, 2005 with two years of probation.

Petitioner filed a brief on exceptions on April 12, 2006.

Respondent filed a brief opposing exceptions on April 28, 2006.

This matter was adjudicated by the disciplinary board at the meeting on July 15, 2006.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, Office of Disciplinary Counsel, whose office is located at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the Rules of Disciplinary Enforcement.

(2) Respondent, Reed James Davis, was born in 1964 and was admitted to the practice of law in the Commonwealth of Pennsylvania in 1992. He maintains an office for the practice of law at 393 Vanadium Road, Suite 300, Pittsburgh PA 15243. Respondent is subject to the jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.

(3) Respondent has no prior record of discipline.

(4) On January 20, 2000, pursuant to an investigation initiated by the Monroeville Police Department, respondent delivered 56.5 grams of cocaine to a confidential informant. On February 3, 2000, respondent delivered 29.5 grams of cocaine to the same informant. On March 15, 2000, respondent delivered 57.9 grams of cocaine to the same informant. An affidavit of probable cause issued and on August 24, 2000 criminal charges were filed against respondent for possession, possession with intent to deliver and delivery of a controlled substance, namely, cocaine.

(5) On December 6, 2003, respondent entered a plea of guilty to the charges. On June 9, 2004, respondent was sentenced to prison for one year to three years followed by two years probation.

(6) Following his graduation from law school and admission to the bar in 1992, respondent practiced law with his father, Reed J. Davis Sr.

(7) Respondent first used cocaine and marijuana in college. He continued to use cocaine in law school as well, but his use was on an infrequent basis.

(8) In the spring or summer of 1996 respondent met an individual named John Sallo. Mr. Sallo was in a motorcycle accident and was given respondent's name in connection with his personal injury case.

(9) Respondent met with Mr. Sallo to discuss the case but did not formally undertake representation of Mr. Sallo until September of 1996.

(10) When respondent initially met Mr. Sallo, he asked respondent if he used cocaine and, on several occasions during the summer of 1996, Mr. Sallo gave respondent cocaine without charging him for it.

(11) After respondent began formal representation of Mr. Sallo, cocaine was still offered to respondent but Mr. Sallo told respondent he would have to pay for it. Respondent could not afford to pay for it and stopped using it. Mr. Sallo's case settled in the third week of April 1997.

(12) In the summer of 1997 respondent was contacted by a college friend, James Ardolino, who asked respondent if he knew where to obtain cocaine.

(13) Respondent contacted Mr. Sallo who agreed to provide cocaine to respondent, who would then hand it over to Mr. Ardolino minus a gram or two for respondent's use.

(14) This pattern occurred once or twice a month from the summer of 1997 through respondent's arrest in March 2000.

(15) Respondent was aware that his conduct was illegal.

(16) During the time frame summer of 1997 through spring of 2000 respondent gradually became addicted to cocaine.

(17) Respondent tried to remove himself from the situation but could not do so.

(18) After he was apprehended in March of 2000, respondent stopped using cocaine.

(19) On May 10, 2000 respondent was admitted to Gateway Greentree's intensive outpatient program where he attended three meetings each week until his discharge on June 12, 2000. Respondent learned about addiction as a disease and learned to acknowledge and accept his addiction.

(20) On June 20, 2000 respondent was admitted to Gateway Greentree's early recovery group program where he met once per week from June 20, 2000 through March 18, 2003. Respondent participated in group sessions wherein recovering addicts discussed their experiences, the disease and its impact on their lives.

(21) Shortly after respondent began treatment with Gateway Greentree he attended a meeting of Lawyers Concerned for Lawyers. Except for the period of his incarceration, respondent has dutifully attended Lawyers Concerned for Lawyers meetings every week.

(22) On August 16, 2004, respondent commenced his prison term. He was confined to Camp Hill for four months, and then transferred to SCI Fayette until his discharge on August 16, 2005. While in prison respondent regularly attended Alcoholics Anonymous meetings once per week.

(23) On May 13, 2005 the Supreme Court of Pennsylvania placed respondent on temporary suspension.

(24) Respondent was paroled on August 16, 2005 after serving one year in prison. He remains on parole for two years, until approximately August 2007, after which he will commence a two-year probation period. He will be under the jurisdiction of the criminal courts

through June of 2009. Respondent is prohibited from entering establishments which serve alcohol. He is subject to random urine sampling. His movements are restricted to a six county radius of Allegheny County.

(25) Following his discharge from prison respondent returned to his father's law firm. He has worked solely in the collections department with telemarketers. He has not practiced law since he was incarcerated on August 16, 2004.

(26) Dr. John D. Massella is the Regional Program Director of Gateway Greentree and evaluated respondent for his addiction to cocaine. By letter of August 29, 2005, to Cynthia Hudson, respondent's probation officer, Dr. Massella relayed his diagnosis of respondent as cocaine dependence in full remission, based on respondent's reported pathological history of cocaine use from which he has remained abstinent since March 2000. Dr. Massella recommended continued involvement in 12 step meetings and attendance at Lawyers Concerned for Lawyers.

(27) There is no evidence that respondent's addiction adversely impacted his law practice or injured a client.

(28) Numerous witnesses testified on respondent's behalf.

(29) Theodore Blair, Esquire, is a Pittsburgh attorney and recovering alcoholic. He is active in Lawyers Concerned for Lawyers and is respondent's sobriety monitor. Mr. Blair confirmed respondent's abstinence from drugs and verified that respondent has actively participated in LCL and has a good attitude regarding his sobriety.

(30) Mark F. Flaherty, Esquire, is a practicing attorney and recovering alcoholic. He has been a member of the Board of Directors for Lawyers Concerned for Lawyers for the past 10 years and is a member of the Lawyers Assistance Committee of the Pennsylvania Bar Association.

(31) Mr. Flaherty verified that respondent regularly attends LCL meetings and has maintained his sobriety.

(32) James Ehrman, Esquire, is a practicing attorney and recovering alcoholic. He has had consistent contact with respondent for the past four years and believes that respondent has honestly and genuinely engaged in the LCL program.

(33) Dan Hall is a recovering alcoholic and first met respondent in June 2000 at the early recovery program at Gateway Greentree. Mr. Hall became respondent's sponsor charged with the responsibility of guiding respondent through the 12 steps to recovery. According to Mr. Hall, respondent's participation was "solid." Respondent worked through the steps and showed a positive outlook.

(34) Mr. Hall sees respondent twice weekly and communicates three or four times weekly about maintaining sobriety.

(35) David Kern has been a personal friend of respondent since college. He described respondent's reputation in the community as good for being a good person and family man, as well as a good businessman.

(36) Alex Demczak utilized respondent's legal services while Mr. Demczak was employed by several banks in

the 1990s. He described respondent's work as excellent and of good quality.

(37) Reed J. Davis Sr., Esquire, is respondent's father. He has practiced law since 1959. He first learned of respondent's addiction to cocaine when respondent told him in April or May of 2000. Mr. Davis did not view any falling off in respondent's work pattern or work product prior to respondent's arrest.

(38) Respondent expressed remorse for his criminal misconduct.

## III. CONCLUSIONS OF LAW

(1) The crimes of delivery of a controlled substance, possession with intent to deliver a controlled substance, and possession of a controlled substance are crimes punishable by more than one year in prison and are serious crimes as defined by Pa.R.D.E. 214(i).

(2) Respondent's conviction constitutes an independent basis for discipline, pursuant to Pa.R.D.E. 203(b)(1).

(3) Respondent has met his burden of proof by clear and convincing evidence that he was addicted to cocaine and this addiction caused him to engage in criminal misconduct.

(4) Respondent is entitled to mitigation pursuant to *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989).

## IV. DISCUSSION

Respondent was convicted of three counts each of delivery of a controlled substance, possession with intent

to deliver a controlled substance, and possession of a controlled substance. The maximum incarceration for these crimes is 10 years for each count of delivery of a controlled substance and possession with intent to deliver controlled substance, and one year for each count of possession of a controlled substance. Since these crimes are punishable by incarceration of one year or more, each is a "serious crime". Rule 214(i), Pa.R.D.E. Respondent's conviction is thus a basis for the imposition of discipline. Rule 203(b)(1), Pa.R.D.E. The sole issue to be determined in a criminal conviction matter is the extent of final discipline to be imposed. All relevant aggravating and mitigating factors must be considered and evaluated. *Office of Disciplinary Counsel v. Chung,* 548 Pa. 108, 695 A.2d 405 (1997).

Respondent provided credible evidence of his drug use, his gradual addiction to cocaine, and his ultimate rehabilitation from that addiction. Respondent used cocaine sporadically until approximately 1997, when he became involved as a type of middleman between a college friend who was buying cocaine from respondent's former client. During the three-year time frame that respondent acted as a middleman he used more and more cocaine until he realized that he did not like using it anymore but could not stop using it. He was unable to remove himself from the situation, and ultimately arrested, convicted, and incarcerated for a period of a year. In addition to respondent's testimony, evidence was admitted of respondent's diagnosis of cocaine dependence in full remission, provided by Dr. John D. Massella of Gateway Greentree.

Respondent introduced numerous witnesses, including his sobriety monitors and sponsors, who credibly testified as to respondent's continued sobriety since 2000 and his positive attitude and efforts toward maintaining his sobriety. Respondent's evidence of rehabilitation is particularly strong and impressive. Immediately after his arrest in March of 2000, he pursued recovery through Gateway Greentree's intensive outpatient program and for three years thereafter, he diligently participated in Gateway Greentree's group recovery program. While incarcerated respondent attended Alcoholics Anonymous every week. Respondent is an active member of Lawyers Concerned for Lawyers, a well-established support group. The evidence supports respondent's assertion that he has abstained from using drugs since he began his recovery in May of 2000.

Respondent has no history of discipline or prior criminal activity, and no clients were involved in the instant criminal activities. Of note is that during the time frame of respondent's formal representation of Mr. Sallo, the individual who provided the cocaine, respondent did not take or buy cocaine from Mr. Sallo. Respondent's drug consumption occurred prior to the formal representation and after the representation had concluded, but not during the representation, because, as respondent explained, he could not afford to buy cocaine from Mr. Sallo at that time. Respondent was not motivated to turn a profit from his middleman activities; in his mind he was essentially helping a friend and participated in order to get one or two grams of cocaine for his own use. Respondent admits that he knew he was engaging in illegal activity. He has

expressed sincere remorse and regret as well as a determination to control his addiction and remain sober.

The Hearing Committee found that "respondent's misconduct was induced in part by his addiction, that is to say, respondent's addiction was a causal factor of his criminal conduct." Report, p. 14. The record is not clear that respondent was addicted to cocaine when he initially took part in the middleman scheme. Respondent himself admits that he stopped using cocaine at a point prior to the summer of 1997 because he could not afford to buy it, and was not addicted to cocaine when he began acting as a middleman. However, it is certainly fair to conclude that respondent became addicted to cocaine during the pendency of his criminal activities and the addiction caused his continued criminal misconduct. The totality of the evidence supports the conclusion that respondent met the *Braun* standard for mitigation. *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989).

Petitioner and respondent have differing positions on the appropriate sanction to address the misconduct and have advanced their arguments to the board in briefs on exceptions. While respondent agrees with the Hearing Committee's recommendation of a one-year suspension and two years probation, petitioner argues that no less than a two and a half year suspension is adequate to fulfill the goals of the disciplinary system. Petitioner bases this argument on the seriousness of the criminal conviction, pointing out that in the past, conviction of delivery of a controlled substance has warranted disbarment. *Office of Disciplinary Counsel v. Simon,* 510 Pa.

312, 507 A.2d 1215 (1986) (respondent-attorney was charged in a federal indictment with possession and intent to distribute and conspiracy; refused to cooperate with law enforcement officials; testified he found criminal life exciting and an escape from life's stressors). See also, *In re Anonymous No. 3 D.B. 89,* 18 D.&C.4th 490 (1993) (respondent-attorney pleaded guilty to one count of distribution of drugs; indictment contained 113 counts; respondent one of 28 defendants involved in drug conspiracy; six years incarceration with parole of five years; respondent addicted to cocaine; suspended for five years retroactive to temporary suspension). The board's examination of these cases indicates that they are distinguishable or explainable on the particular facts.

Petitioner's theory of its proposed sanction also rests on the perception that respondent must go through the reinstatement process to prove he is fit to practice law. Realistically, the Hearing Committee and the board have already had ample opportunity to review respondent's fitness to practice law. The type of evidence that would be presented at a reinstatement hearing in a case of this nature is similar to that already presented, *i.e.,* efforts at rehabilitation and maintenance of sobriety. Respondent has already been consistently sober for more than five years and no evidence was presented that suggests he is at risk for recidivist behavior.

Following a review of the committee's recommendation, as well as the respective positions of the parties, the board concurs with the committee and is persuaded that a one-year suspension, retroactive to the date of the temporary suspension, followed by two years of

probation with a sobriety monitor, is the appropriate discipline to address respondent's misconduct.[1] Respondent's crime was egregious, but he currently represents no danger to the public. He gained significant insight into his addiction and is committed to his continued sobriety.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Reed James Davis, be suspended from the practice of law for a period of one year retroactive to May 13, 2005 and be placed on probation for two years, subject to the following conditions:

(1) Respondent shall abstain from using alcohol or any other mind altering chemical;

(2) Respondent shall regularly attend Alcoholics Anonymous meetings on a weekly basis;

(3) Respondent shall obtain a sponsor in Alcoholics Anonymous and maintain weekly contact with that sponsor;

(4) A sobriety monitor shall be appointed to monitor respondent in accordance with Disciplinary Board Rule 89.293(c);

---

1. Respondent remains on criminal parole until 2007 followed by probation until 2009. The impact of the criminal sentence was not discussed in any detail by the committee or the parties and did not appear to influence the respective recommendations to the board.

(5) Respondent shall furnish his sobriety monitor with his Alcoholics Anonymous sponsor's name, address and telephone number;

(6) Respondent shall establish his weekly attendance at Alcoholics Anonymous meetings by providing written verification to the board on a board-approved form;

(7) Respondent shall undergo any counseling, out-patient or in-patient treatment, prescribed by a physician or alcohol counselor;

(8) Respondent shall file with the secretary of the board quarterly written reports;

(9) With the sobriety monitor, respondent shall:

(a) meet at least twice a month;

(b) maintain weekly telephone contact;

(c) provide the necessary properly executed written authorizations to verify his compliance with the required substance abuse treatment; and

(d) cooperate fully.

(10) The appointed sobriety monitor shall:

(a) monitor respondent's compliance with the terms and conditions of the order imposing probation;

(b) assist respondent in arranging any necessary professional or substance abuse treatment;

(c) meet with respondent at least twice a month, and maintain weekly telephone contact with respondent;

(d) maintain direct monthly contact with the Alcoholics Anonymous chapter attended by the respondent;

(e) file with the secretary of the board quarterly written reports; and

(f) immediately report to the secretary of the board any violations by the respondent of the terms and conditions of the probation.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Member Newman did not participate in the adjudication.

Board Members Teti, Brown and Gephart dissented for suspension the length of time while respondent is on parole and probation.

Board Member O'Connor dissented for a one-year and one-day suspension.

---

## DISSENTING OPINION

O'CONNOR, *Member,* November 3, 2006—

## DISCUSSION

The recommendation of the Disciplinary Board is that respondent be suspended for one year retroactive to May 13, 2005 and be placed on probation for two years. I am writing in dissent.

I disagree with the majority determination that respondent's misconduct warrants a one-year suspension, which sanction would relieve him of the obligation to file a petition for reinstatement to the Supreme Court and prove

his fitness to practice law. It is my respectful opinion that respondent's criminal conviction of delivery of a controlled substance, possession with intent to deliver a controlled substance and possession of a controlled substance, namely cocaine, constitutes misconduct that is serious enough to raise questions as to his fitness to practice. Respondent knowingly committed criminal acts and thus cast doubt upon his character and respect for the law. These questions can only be answered to the satisfaction of the board and the Supreme Court by requiring respondent to engage in the reinstatement process and assure the court that he does not pose a danger to the public and a detriment to the profession.

Furthermore, respondent has not fully completed his criminal sentence. He was paroled in August of 2005 after serving one year in prison. He remains on parole until approximately August 2007, after which time he will commence a two-year probation period. He will be under the jurisdiction of the courts through June of 2009. In my respectful opinion, it would be a highly inappropriate situation for an attorney who is still on parole and even one still on probation to be permitted to represent clients in the court system.

The facts of this case support a suspension of at least one year and one day.

## ORDER

And now, January 18, 2007, upon consideration of the report and recommendations of the Disciplinary Board and dissenting opinion dated November 3, 2006, it is hereby ordered that Reed James Davis be and he is sus-

pended from the bar of this Commonwealth for a period of one year and one day retroactive to May 13, 2006, and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.