701 A.2d 556

**OFFICE OF DISCIPLINARY COUNSEL, Petitioner,**

v.

**Robert D. MONSOUR, Respondent.**

Supreme Court of Pennsylvania.

Argued April 29, 1997.

Decided Oct. 23, 1997.

Samuel F. Napoli, Pittsburgh, for petitioner.

Robert D. Monsour, Irwin, Thomas R. Ceraso, Greensburg, for respondent.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ.

## OPINION

NEWMAN, Justice.

Respondent Robert D. Monsour (Monsour) has filed exceptions to the Disciplinary Board's report recommending his disbarment.

On November 1, 1991, the Office of Disciplinary Counsel filed a Petition for Discipline against Monsour, alleging that he had violated the Rules of Professional Conduct by mishandling client funds. A three-member hearing committee held hearings on July 27, 1992 and November 18, 1992. Based on a Petition to Reopen the Record filed by Monsour, the committee held an additional hearing on September 12, 1994, for the limited purpose of allowing Monsour to present evidence regarding his alcoholism.

The hearing committee found that between June of 1988 and September of 1990, Monsour intentionally misappropriated funds from his client trust account. At the hearing, Monsour stipulated to the accuracy of the spreadsheets prepared by the Office of Disciplinary Counsel that show serious

deficiencies in his client trust accounts on specific dates. For example, the hearing committee found that on June 21, 1989, Monsour was entrusted with $96,224.68, but that the client trust account balance was only $31,326.29, thus representing a deficiency of $64,989.39. Furthermore, on one occasion, Monsour used funds entrusted to him on behalf of one client to make a payment to another client. The hearing committee also found that Monsour deposited personal funds into the account, thus commingling personal funds with entrusted funds. In addition, the hearing committee found that he disobeyed a court order regarding the handling of funds for minor clients.

On October 20, 1995, the committee filed its report concluding that (1) Monsour's misappropriation of client funds was dishonest conduct in violation of Rule of Professional Conduct (RPC) 8.4(c); (2) Monsour's treatment of entrusted funds as his own was criminal conduct reflecting adversely on his fitness to practice law in violation of RPC 8.4(b); and (3) his failure to obey an order of the Court of Common Pleas of Westmoreland County to place the proceeds of a settlement on behalf of two minor children into an interest bearing account, and to withdraw funds from the account only with court approval was conduct prejudicial to the administration of justice in violation of RPC 8.4(d).[1] The hearing committee recommended disbarment.

Monsour filed exceptions, and on January 29, 1996, a three-member panel of the Disciplinary Board heard oral argument. By report dated May 29, 1996, the Board adopted the hearing committee's findings, concluded that Monsour had violated RPC 8.4(b), (c) and (d), and recommended his disbarment.

---

**1.** Rule 8.4 provides in relevant portion:

It is professional misconduct for a lawyer to:

. . . .

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

. . . .

Monsour filed a Petition for Review with this Court, and we granted oral argument.[2]

■■■ "In attorney discipline matters we exercise de novo review, and we are not bound by the findings and recommendations of the hearing committee or the Board, though we give them substantial deference." *Office of Disciplinary Counsel v. Chung,* 548 Pa. 108, 695 A.2d 405 (1997). The record before us clearly reveals that Monsour engaged in a deliberate pattern of raiding his client trust account for personal use. At the hearing, Monsour admitted that before he began misusing entrusted funds, his office manager warned him not to do so. Misappropriation of client funds is a serious offense that may warrant disbarment. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983); *Office of Disciplinary Counsel v. Knepp,* 497 Pa. 396, 441 A.2d 1197 (1982); *Office of Disciplinary Counsel v. Lewis,* 493 Pa. 519, 426 A.2d 1138 (1981). As this Court noted in *Lewis:*

> A client must ... rest assured that any financial transactions carried out on the client's behalf will be scrupulously honest, will be accounted for at the client's request, and will involve full and immediate payment of funds that are due and owing to the client. This public trust that an attorney owes his client is in the nature of a fiduciary relationship involving the highest standards of professional conduct.

*Id.* at 529, 426 A.2d at 1143. Although this Court has disbarred attorneys who have commingled or improperly shifted funds in escrow accounts, we have declined to adopt a per se rule requiring disbarment for specific acts of misconduct. *Lucarini.* Instead, we consider each case individually, evaluating all relevant facts. *Chung.*

At the hearing, Monsour testified that he was an alcoholic at the time of his misconduct, and that at the height of his problem he drank ten to twenty twelve-ounce beers a day, every day of the week. He has a family history of alcoholism, and his first wife left him in 1985 because of his drinking.

---

**2.** Monsour also sought to present additional evidence regarding mitigation. This Court denied the request by Order dated August 13, 1996.

Alcohol interfered with his ability to work, causing his staff to cover for him when he missed appointments. He was arrested four times for driving while under the influence, and sought treatment when his health, career and second marriage began to deteriorate. In February of 1994, he entered an intensive outpatient counseling program at Gateway Rehabilitation Center (Gateway). He began attending Alcoholics Anonymous meetings as part of his treatment and continues to attend meetings approximately two times per week. He testified that he has been sober since entering Gateway.

Dr. Neil Capretto, Director of Treatment at Gateway, testified by way of deposition, that he met with Monsour for ninety minutes on October 7, 1994. He spoke with him by telephone several times for a total of one hour, and discussed Monsour's situation with his wife for thirty to forty-five minutes. He reviewed Monsour's treatment records and spoke to his therapist at Gateway and his Alcoholics Anonymous sponsor. Dr. Capretto testified that he believed that Monsour knew what he was doing was wrong at the time he engaged in misconduct. While Dr. Capretto opined that Monsour's alcoholism was directly related to his misconduct, he was not aware of the extent of Monsour's actions, and believed that he had misappropriated $5,000.00 or $10,000.00.

For alcohol abuse to be considered a mitigating factor in disciplinary proceedings, the respondent must establish by clear and convincing evidence that alcoholism was a causal factor in his misconduct. *Office of Disciplinary Counsel v. Braun*, 520 Pa. 157, 553 A.2d 894 (1989). In its report, the Board determined that Dr. Capretto's testimony did not convincingly establish a causal nexus between Monsour's alcoholism and his misconduct. It concluded that Monsour failed to meet his burden of proof because of: (1) the short period of time Dr. Capretto spent with Monsour; (2) the lapse of eight months between the end of Monsour's treatment and his meeting with Dr. Capretto; and (3) the doctor's vague acquaintance with the details of the misconduct.[3] We note that

3.  Monsour argues that the Board erred by not including evidence of his alcoholism in its finding of facts. However, we note that in the

nowhere in his deposition testimony does Dr. Capretto state how he determined that Monsour's conduct was related to his alcohol abuse.

This Court has not established a per se rule that only a treating health care professional can establish the causal link between a respondent's misconduct and his psychiatric disorder, including addiction. However, our review of Dr. Capretto's testimony leads us to conclude that he lacked sufficient familiarity with the instant case to establish the connection between Monsour's alcoholism and his misconduct. *Braun.*

■ Monsour also asserts that he provided other evidence that mitigates the imposition of disbarment in this case. He states that he admitted his misconduct and cooperated with the Office of Disciplinary Counsel in its investigation, which may be considered a mitigating circumstance. *Office of Disciplinary Counsel v. Christie,* 536 Pa. 394, 639 A.2d 782 (1994). However, the transcripts of the investigatory hearings in this matter indicate that Monsour resisted complying with requests for bank records. As such, even though he later admitted the strength of the case against him, he did not show a willingness to cooperate that justifies mitigation.

Monsour also claims that during the time of his misconduct, he had the legal right to access bank accounts of his father and uncle containing more than one million dollars. He and his uncle both testified to this effect at the hearing. Nevertheless, in *Office of Disciplinary Counsel v. Kanuck,* 517 Pa. 160, 535 A.2d 69, this Court held that the fact that an attorney had money in other accounts to cover the amount he misappropriated from escrow accounts, is "not relevant either as a defense or in mitigation of the violations which were proven by clear and convincing evidence." *Id.* at 173, 535 A.2d at 76.

■ As a mitigating factor, Monsour also points to his payment in full of all funds to clients before the institution of

Discussion section of its report the Board includes a summary of Respondent's testimony and that of Dr. Capretto on the issue of Respondent's alcohol abuse. When read in its totality, the Board's report is sufficient to aid the Court in its de novo review of the matter.

the investigation. The Office of Disciplinary Counsel first notified Monsour of allegations concerning the funds of his clients Mr. and Mrs. Cararini on November 7, 1989. However, he did not make payments to them until November 17, 1989 and April 11, 1990. Disciplinary Board's Finding of Fact No. 124. In *Knepp,* this Court held that restitution by an attorney who was aware of an investigation against him did not "sufficiently mitigate the severity of respondent's misconduct as to justify a lesser form of discipline." *Id.* at 404, 441 A.2d at 1201. Accordingly, this action does not qualify as a mitigating factor.

■ After disciplinary proceedings began, Monsour limited his practice to relatives and close friends. However, as we noted in *Knepp,* the fact that an attorney reduces his practice after the commencement of disciplinary proceedings is irrelevant, and accordingly should not be viewed by the Court as a mitigating action.

For these reasons, we adopt the recommendation of the Disciplinary Board and disbar Robert D. Monsour from the practice of law in the Commonwealth of Pennsylvania. It is further ordered that he shall comply with the provisions of Pa.R.D.E. 217 and that he shall pay costs, if any, to the Disciplinary Board pursuant to Pa.R.D.E. 208(g).

FLAHERTY, C.J., files a dissenting opinion.

FLAHERTY, Chief Justice, dissenting.

Inasmuch as the respondent has made payment in full to clients prior to or immediately upon institution of the investigation, I would, as an inducement to others in like circumstances suspend for five years rather than disbar. In all other respects, I join in the rationale employed by the majority.