**Office of Disciplinary Council v. Goykhman**

Disciplinary Board Docket no. 66 D.B. 2001.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

NEWMAN, *Member,* February 3, 2004—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On October 9, 2001, petitioner, Office of Disciplinary Counsel, filed a petition for discipline against respondent, Vladimir Goykhman. The petition contained six charges alleging that respondent engaged in a pattern of mishandling fiduciary funds and, in some instances, misappropriated fiduciary funds. One of the charges was withdrawn by petitioner, and a seventh charge was added by agreement of the parties. Respondent filed an answer to petition for discipline on November 14, 2001.

A disciplinary hearing was held on June 18, 2002, and continued on January 29, 2003, before Hearing Committee 1.11 consisting of Chair Samuel J. Pace Jr., Esquire, Member George M. Vinci Jr., Esquire, and Alternate Member Lindley M. Cowperthwait Jr., Esquire. Respondent was represented by James P. Leonard, Esquire. Petitioner introduced into evidence joint stipula-

tions of fact, supplemental joint stipulations of fact and law, exhibits, and the testimony of nine witnesses. Respondent introduced exhibits and the testimony of one witness. Respondent did not testify.

Following briefing by the parties, the committee filed a report on August 28, 2003 and recommended that respondent be disbarred from the practice of law.

Respondent filed a brief on exceptions on September 30, 2003. Petitioner filed a brief opposing exceptions on October 20, 2003.

This matter was adjudicated by the Disciplinary Board at the meeting of November 19, 2003.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania 17101, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of any attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of said rules.

(2) Respondent was born in 1960 and was admitted to practice law in the Commonwealth of Pennsylvania in 1987. His current mailing address is 1458 Brook Lane, Jamison, PA 18929. Respondent is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

## The Pukhiy Matter

(3) In or around May 1997, respondent was retained to represent Shika Pukhiy in a claim for personal injuries sustained in an automobile accident.

(4) In April 1998, respondent filed a claim on behalf of Mr. Pukhiy.

(5) On January 13, 1999, an arbitration was held in Mr. Pukhiy's matter. The arbitrators found in favor of Mr. Pukhiy in the amount of $17,500.

(6) Thereafter respondent settled the case for $10,000.

(7) In February 1999, respondent received a check in the amount of $10,000 from Erie Insurance Company made payable to "Shika Pukhiy and Goykhman and Associates."

(8) On or about February 12, 1999, respondent cashed the check at a check-cashing agency, Pratt Service, on Frankford Avenue in Philadelphia. The agency later deposited the check in their Mellon Bank account.

(9) Respondent did not deposit the funds into a fiduciary account.

(10) On or about March 29, 1999, respondent executed a handwritten document promising that the settlement funds would be distributed to Mr. Pukhiy by 12 a.m. on March 31, 1999.

(11) Respondent did not make distribution of the proceeds to Mr. Pukhiy by March 31, 1999.

(12) Respondent distributed $7,500 to Mr. Pukhiy on April 16, 1999.

(13) On April 16, 1999, Mr. Pukhiy signed a "Settlement statement" and a power of attorney.

(14) Prior to April 16, 1999, Mr. Pukhiy had not given respondent permission to sign the settlement check on Mr. Pukhiy's behalf.

(15) The signature on the back of the settlement check was not Mr. Pukhiy's signature.

(16) By letter dated April 16, 1999, to the Disciplinary Board, Mr. Pukhiy stated that respondent had given Mr. Pukhiy the funds, and he did not want to proceed with his complaint against respondent.

(17) On April 16, 1999, Mr. Pukhiy signed a release, releasing respondent from any liability regarding his accident.

### The Shpigel Matter

(18) On August 27, 1998, Gregory Shpigel retained respondent to represent him in a personal injury claim arising from an automobile accident. At that time, respondent and Mr. Shpigel entered into a 30 percent contingent fee agreement.

(19) By letter dated April 5, 1999, Hartford Insurance Company notified Mr. Shpigel that payment in the amount of $6,000 was mailed to Goykhman & Associates.

(20) On April 5, 1999, respondent witnessed a "Receipt, release and trust agreement under uninsured motorist coverage" between Mr. Shpigel and Hartford Insurance in which Mr. Shpigel acknowledged receipt of $6,000.

(21) Shortly thereafter respondent received a check from Hartford Insurance Company in the amount of $6,000 made payable to "Goykhman & Associates P.C. as attorneys for Gregory Shpigel."

(22) Respondent cashed the settlement check at a check-cashing agency on April 9, 1999. Thereafter the agency deposited the check into its Fidelity Bank account.

(23) Mr. Shpigel did not give respondent authority to sign the settlement check on his behalf.

(24) Respondent did not deposit the funds into a fiduciary account.

(25) Mr. Shpigel telephoned respondent on numerous occasions and inquired about the status of his settlement.

(26) Respondent failed to return Mr. Shpigel's telephone calls.

(27) As of the date of the disciplinary hearing, respondent had not distributed any settlement funds to Mr. Shpigel.

### The Yukhananov Matter

(28) On or about December 22, 1994, Ella and Rafail Yukhananov retained respondent to represent themselves as parents and their minor son, Dmitry, in a slip and fall action against Joseph and Jane Koch, who were insured by Philadelphia Contributorship Insurance Company.

(29) Respondent negotiated a settlement agreement with Contributorship on behalf of the Yukhananovs in the amount of $15,000.

(30) On July 9, 1997, the Yukhananovs signed a joint tort-feasor release and settlement of claim agreement.

(31) On July 10, 1997, the Yukhananovs terminated respondent's representation.

(32) Respondent forwarded the release agreement to Contributorship.

(33) Respondent failed to get the required court approval for the settlement in the form of a minor's compromise.

(34) On July 11, 1997, Contributorship issued a $15,000 check payable to the Yukhananovs and respondent.

(35) On or about July 16, 1997, respondent endorsed the settlement check, signed and/or caused the Yukhananovs' names to be signed on the check, and deposited the check into his CoreStates First Pennsylvania Bank account.

(36) Respondent did not inform the Yukhananovs that he had received the funds.

(37) Thereafter, respondent withdrew the funds from his escrow account.

(38) Respondent did not maintain the funds in the escrow account as required.

(39) In December 1997, respondent spoke to the Yukhananovs' new attorney, Dante Mattioni, Esquire.

(40) Respondent did not advise Mr. Mattioni that respondent had received the settlement funds.

(41) On or about December 5, 1999, Mr. Mattioni filed an action on behalf of the Yukhananovs against Mr. and Mrs. Koch.

(42) It was only after Mr. Mattioni filed this action that he discovered respondent had received the settlement funds.

(43) Respondent has not transferred the settlement funds to Mr. Mattioni.

## The Klebanov Matter

(44) On December 17, 1997, Tatyana Klebanov retained respondent to represent her in a personal injury claim arising out of an automobile accident.

(45) In early 1999, respondent negotiated a $5,000 settlement with Prudential Insurance Company. Ms. Klebanov accepted the offer and executed the required release forms.

(46) On March 4, 1999, respondent received a $5,000 check made payable to Ms. Klebanov and Goykhman & Associates.

(47) On March 5, 1999, respondent endorsed and cashed the $5,000 settlement check at a check-cashing agency. The agency deposited the check into its Mellon Bank account.

(48) Respondent did not have authority to sign the settlement check on behalf of Ms. Klebanov.

(49) Respondent did not deposit the settlement proceeds into a fiduciary account.

(50) Respondent failed to promptly forward to Ms. Klebanov her portion of the settlement funds.

(51) Beginning in July 1999, Ms. Klebanov's new attorney, Ely Goldin, contacted respondent via telephone

and letters, requesting that respondent forward the settlement funds to Ms. Klebanov.

(52) Respondent failed to forward the funds.

(53) In a meeting on October 13, 1999, between respondent and Attorney Goldin, respondent entered an agreement in which he:

(a) acknowledged that the settlement funds had not been paid to Ms. Klebanov;

(b) agreed to pay Ms. Klebanov $500 as partial payment against the amount owed to her; and

(c) agreed to pay the balance of the funds on or before November 5, 1999.

(54) On October 13, 1999, respondent made a partial payment of $500 to Ms. Klebanov.

(55) As of the date of the hearing, respondent failed to forward to Ms. Klebanov the balance of her settlement funds.

### The Weinbrand Matter

(56) In August 1997, respondent was retained by Izmail and Mira Weinbrand to represent them in a personal injury matter for injuries they sustained in an automobile accident.

(57) In March 1998, respondent negotiated a settlement agreement with Liberty Mutual Insurance Company whereby each client would receive $10,500.

(58) On March 24, 1998, the Weinbrands executed the release agreements.

(59) On March 25, 1998, respondent received the settlement checks from Liberty Mutual, each check in the amount of $10,500.

(60) Respondent endorsed the checks and signed or caused to be signed the Weinbrands' names on the checks.

(61) On April 11, 1998, respondent cashed the checks at a check-cashing agency.

(62) Respondent failed to deposit the funds into his escrow account.

(63) Respondent failed to promptly forward the settlement proceeds to the Weinbrands.

(64) In February 1999, Mr. Weinbrand filed a complaint against respondent with the Office of Disciplinary Counsel.

(65) Mr. Weinbrand informed respondent that he had filed a complaint.

(66) Mr. Weinbrand did not follow through on the complaint because on March 2, 1999, respondent executed a promissory note wherein respondent:

(a) stated that the Weinbrands were entitled to receive $15,750

(b) stated that respondent had paid the Weinbrands one thousand dollars

(c) promised that the balance would be paid in weekly installments of $2,000 until paid, but no later than May 8, 1999

(d) stated that upon payment in full the Weinbrands would sign a letter of distribution.

(67) Respondent failed to distribute any additional funds to the Weinbrands on or before May 8, 1999.

(68) By letter of June 27, 2001, Mr. Weinbrand:

(a) reminded respondent that he had not pursued a disciplinary complaint against respondent

(b) reminded respondent that he had received only $1,000

(c) stated that unless respondent paid the full amount owed, he would file another complaint.

(69) Thereafter, respondent paid the Weinbrands an additional $2,700.

(70) On January 7, 2002, respondent sent a letter to the Weinbrands and promised that once settlement was reached in another client's case, he would pay the Weinbrands their funds from his portion of that client's settlement funds.

(71) As of the date of the hearing, respondent had paid the Weinbrands a total of $3,700 and had failed to forward the remaining balance of $12,050.

## Other Findings

(72) In July 2000, respondent's counsel, James P. Leonard, reported to petitioner that respondent forwarded to Mr. Leonard $7,000 in cash which purportedly belonged to respondent's clients. Mr. Leonard deposited the money in his escrow account.

(73) By letter dated February 21, 2001, to petitioner, Mr. Leonard explained that:

(a) he was currently holding in his escrow account for safekeeping funds which respondent had given to him, said funds belonging to the individuals who had filed disciplinary complaints against respondent;

(b) In July 2000, respondent had forwarded to Mr. Leonard a check written by an unnamed third party in the amount of $15,000 which Mr. Leonard deposited into his IOLTA account;

(c) Subsequently, the unnamed third party stopped payment on the check and "apparently the funds had been misappropriated" by the third party; and

(d) In February 2001, respondent replaced the check with $15,000 in cash, which was deposited into Mr. Leonard's escrow account.

(74) Respondent has no prior history of discipline.

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 1.4(a)—A lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information.

(2) R.P.C. 1.15(a)—A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.

(3) R.P.C. 1.15(b)—Upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person. A lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding such property.

(4) R.P.C. 8.4(b)—It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness in other respects.

(5) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

## IV. DISCUSSION

This matter is before the Disciplinary Board on a petition for discipline filed against respondent charging him with engaging in a deliberate pattern of mishandling and misappropriating fiduciary funds. Petitioner presented clear and convincing evidence that respondent both intentionally and knowingly failed to properly handle fiduciary funds by cashing client settlement checks at a check-cashing agency and intentionally and knowingly converting his clients' funds when he failed to promptly distribute their share of the funds and failed to hold their funds inviolate. Thereafter, respondent made agreements with some of his clients to make payments to them by a

certain date when he knew he did not have the funds available to fulfill his obligations. Respondent admitted that he needed to settle one client's case to make payments in other client cases. Respondent has not made restitution to his clients. Respondent's conversion of fiduciary funds is a criminal act that negates his fitness to be a lawyer.

As a justification for his actions, respondent claimed that he was the victim of a criminal conspiracy whereby the instant complainants were "put up to creating problems for respondent by a criminal element in the community." (N.T. 238.) Respondent presented the testimony of Boris Kholodenko, a relative of his wife. Mr. Kholodenko was a volunteer at respondent's law office from 1997 through 1999. He testified that a criminal conspiracy was initiated by a Mr. Vaisberg, respondent's former employee, who allegedly has ties to the Russian Mafia. Mr. Kholodenko provided absolutely no convincing proof of any such conspiracy, particularly in light of the fact that such alleged criminal activity was not reported to any law enforcement authorities. Mr. Kholodenko's testimony was picked apart by petitioner and was found to be not credible by the Hearing Committee. Review of the record indicates that the committee's findings should not be disturbed. Respondent's claim does not mitigate his misconduct. Respondent was responsible for the fiduciary funds entrusted to him and failed to carry out his professional obligations.

The primary purpose of Pennsylvania's system of lawyer discipline is to protect the public. *Office of Disci-*

*plinary Counsel v. Duffield,* 537 Pa. 485, 644 A.2d 1186 (1994). When the misconduct involves the mishandling of entrusted funds, disbarment may result. *In re Anonymous No. 121 D.B. 1999,* no. 645 Disciplinary Docket no. 3 (Pa. March 23, 2001); *Office of Disciplinary Counsel v. Monsour,* 549 Pa. 482, 701 A.2d 556 (1997). Respondent's cavalier mishandling and misappropriation of client funds is egregious behavior, sustained over a period of years, and deserves the strongest available sanction in order to protect the public from further harm.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that the respondent, Vladimir Goykhman, be disbarred from the practice of law in this Commonwealth.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

## ORDER

And now, May 6, 2004, upon consideration of the report and recommendations of the Disciplinary Board dated February 3, 2004, it is hereby ordered that Vladimir Goykhman be and he is disbarred from the bar of this Commonwealth, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.