**Office of Disciplinary Counsel v. Giba**

Disciplinary Board Docket no. 52 D.B. 2003.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

GENTILE, *Member,* March 23, 2005—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On April 22, 2003, Office of Disciplinary Counsel filed a petition for discipline against respondent, Paul Robert Giba. The petition alleged that respondent misappropriated client funds. Respondent filed an answer and request to be heard in mitigation on July 28, 2003.

A disciplinary hearing was held on April 26 and May 26, 2004, before Hearing Committee 4.13 comprised of Chair Matthew R. Wimer, Esquire, and Members David A. Regoli, Esquire, and Thomas S. Talarico, Esquire. Respondent was represented by Richard H. Lindner, Esquire.

Following the submission of briefs by the parties, the committee filed a report on October 14, 2004, finding that respondent engaged in misconduct violative of Rules of Professional Conduct 1.15(a) and 8.4(c), and recommending that respondent be suspended for two years.

Respondent filed a brief on exceptions on November 3, 2004, and requested oral argument. Petitioner filed a brief opposing respondent's exceptions on November 19, 2004.

Oral argument was held on January 10, 2005, before a three-member panel of the Disciplinary Board chaired by Gary G. Gentile, Esquire, with Members Martin W. Sheerer, Esquire and Nikki P. Nordenberg.

This matter was adjudicated by the Disciplinary Board at the meeting on January 19, 2005.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania 17101, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent, Paul Robert Giba, was born in 1956 and was admitted to practice law in the Commonwealth in 1982. He maintains his office at 20 Donati Road, #101, Pittsburgh, PA 15241-1000. He is subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court.

(3) Respondent has no prior history of discipline.

(4) Sometime prior to January 31, 1997, Attorney Jonathan E. Turak, a member of the bar of the Supreme Court of Pennsylvania and the West Virginia State Bar whose office is located in West Virginia, entered into an informal arrangement with respondent, whereby Attorney Turak would refer to respondent cases as to which either Pennsylvania or the United States District Court for the Western District of Pennsylvania was the proper forum for filing.

(5) From January 31, 1997, until sometime prior to March 1, 2001, Attorney Turak referred the following four client matters to respondent:

(a) Christopher Stilwell;

(b) Norman and Terra Crook;

(c) Teresa Smith; and

(d) Jerry Shelton.

(6) With regard to Mr. and Mrs. Crook, Ms. Smith and Mr. Shelton, there was an agreement between Attorney Turak and respondent to equally divide a contingent fee.

(7) With regard to Mr. Stilwell, it was agreed between Attorney Turak and respondent that respondent should receive 60 percent of a contingent fee, and Attorney Turak should receive 40 percent.

(8) From October 1, 1999, through mid-September 2002, respondent was at various times entrusted with funds in 15 different client matters including those referred to in paragraph 5, above, and for 11 other clients.

(9) Respondent misappropriated funds in his IOLTA account for his own purposes from approximately December 16, 1999, until September 30, 2002. On numerous occasions he was out of trust in excess of $100,000 and the highest amount he was out of trust reached $175,659.63.

(10) On November 20, 2001, Office of Disciplinary Counsel sent a letter of inquiry to respondent concerning a complaint filed by Attorney Turak concerning the Stilwell, Crook, Smith and Shelton matters.

(11) Respondent promptly notified all of his clients referred to in the petition for discipline of the settlement that occurred, via itemized settlement statements that included the gross settlement amount, legal fees, expenses and costs to be reimbursed to respondent, amounts to be paid to third persons and the net proceeds to the clients.

(12) Attorney Turak was promptly notified by respondent of the settlements that occurred in regard to the Stilwell, Crook, Smith and Shelton matters.

(13) Most of the misappropriations involved funds marked for reimbursement of subrogation and health care claims, but some of the misappropriations involved payments due to clients. From time to time, the IOLTA account contained funds that were appropriately due to respondent as fees which he did not take.

(14) During the period of his trust account deficiencies, respondent sometimes left funds in his IOLTA accounts that were due him for fees and/or as reimbursements for costs he had advanced rather than promptly disbursing the same to himself. Such funds were not sufficient to fully reimburse the account for the deficiencies caused by respondent's misappropriation.

(15) During relevant times, respondent did not maintain a running balance in the check registers for his IOLTA accounts or otherwise keep proper ledgers for said accounts.

(16) Four of the client matters were resolved and outstanding entrustments satisfied before respondent received the November 20, 2001 letter of inquiry. Ten of the client matters were resolved and outstanding entrustments satisfied during the period between late November 2001 and June 11, 2002, and the last entrustment was resolved and satisfied by payment to a third-person subrogee on September 12, 2002.

(17) During the period after he received the November 20, 2001 letter of inquiry, through September 12, 2002, respondent completely resolved the deficiency in

his IOLTA account using his own personal funds or funds obtained from other legitimate sources, such as loans from his family.

(18) Respondent made substantial efforts in several cases to compromise and/or cause the release of subrogation claims, and to assure compliance by health care providers with statutory cost containment requirements in automobile accident cases. Such efforts resulted in substantial savings to respondent's clients.

(19) Respondent experienced staff and administrative problems during relevant times of his misconduct that adversely impacted his maintenance of, and record-keeping for, his trust accounts.

(20) Respondent experienced serious family issues during the time frame of his misconduct.

(21) Respondent's minor daughter has albinism, eye deficiencies and cardiac problems, respondent's step-daughter exhibited disciplinary problems, and respondent's wife engaged in an extra-marital affair, which severely strained their relationship.

(22) Respondent developed a major depression that led to an inability to function at work.

(23) In December 2001, respondent came under the care of a psychologist, Dr. William Cagney, who subsequently referred respondent to a psychiatrist, Dr. Stuart Burstein, for additional treatment.

(24) Dr. Burstein and Dr. Cagney diagnosed respondent with major depression. Dr. Cagney continued treating respondent with psychotherapy on a regular basis from December 2001 through May 2003. While Dr. Cagney served as respondent's primary psychotherapist,

Dr. Burstein saw respondent on five occasions for the purpose of medication management and support psychotherapy.

(25) Dr. Burstein prescribed Celexa to treat respondent's depression. That prescription continues to date.

(26) Dr. Burstein assumed the role of respondent's primary therapist in August 2003.

(27) Dr. Burstein testified at the disciplinary hearing and opined that, beginning in 1997 and continuing though the period of his misconduct, respondent suffered from major depression, complicated by respondent's obsessive-compulsive and narcissistic personality traits.

(28) Respondent's depression included symptoms of repressed anger, despair, feelings of hopelessness and helplessness, loss of interest in activities, lack of energy, sleep and appetite problems.

(29) Dr. Burstein opined that respondent's depression allowed respondent's obsessive-compulsive and narcissistic personality traits to surface and play a more prominent role in his conduct during relevant times.

(30) Dr. Burstein opined that respondent's major depression, in conjunction with the personality traits, impaired respondent's judgment and caused his mishandling of funds.

(31) Petitioner presented the expert testimony of Robert Wettstein M.D.

(32) Dr. Wettstein's testimony and report confirmed Dr. Burstein's diagnosis of respondent.

(33) Dr. Wettstein opined that depression does not ordinarily cause illegal or dishonest conduct such as that

engaged in by respondent, but he acknowledged that depression can accentuate personality traits, and in combination, these psychological infirmities can cause dishonest conduct.

(34) Dr. Burstein and Dr. Wettstein opined that respondent's depression is being effectively treated and is in remission.

(35) Respondent presented the testimony of five character witnesses.

(36) Attorneys William R. Caroselli, Kevin E. Leonard, Richard J. Joyce, Richard J. Schubert and Scott R. Melton all testified as to respondent's good character and the aberrational nature of the misconduct engaged in by respondent.

(37) Respondent presented character letters from five additional witnesses.

(38) Respondent expressed sincere remorse and accepts full responsibility for his misconduct.

## III. CONCLUSIONS OF LAW

By his conduct as set forth above, respondent violated the following Rules of Professional Conduct:

(1) R.P.C. 1.15(a)—A lawyer shall hold property of clients or third persons that is in a lawyer's possession in connection with a representation separate from the lawyer's own property.

(2) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(3) Respondent met his burden of proof pursuant to *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989), showing by clear and convincing evidence that his psychiatric disorder was a substantial cause of his misconduct.

## IV. DISCUSSION

It is uncontested that respondent engaged in the systematic misappropriation of entrusted funds from approximately December 1999 until September 2002. The deficiency in his IOLTA account was in excess of $100,000 for a substantial period of time and rose to $175,000 in August 2001. Respondent failed to hold entrusted funds separate from his own and engaged in dishonest conduct. In the absence of compelling mitigating factors, this conduct would warrant disbarment. *Office of Disciplinary Counsel v. Lucarini,* 504 Pa. 271, 472 A.2d 186 (1983); *Office of Disciplinary Counsel v. Monsour,* 549 Pa. 482, 701 A.2d 556 (1997). Respondent presented credible mitigating evidence, the most significant of which was his major depression that resulted in his inability to carry out his duties as an attorney, thus causing a financial crisis in his family, which ultimately led him to make the improper decision to misappropriate funds. Respondent intended to pay the funds back and hoped he would not get caught, but his misconduct was out of control and led to investigation by Office of Disciplinary Counsel.

Respondent presented the expert testimony of Dr. Stuart Burstein, his treating psychiatrist. Dr. Burstein testified that respondent suffered from a major depressive disorder and has obsessive-compulsive and narcis-

sistic personality traits. Dr. Burstein credibly testified that respondent's psychiatric disorder caused his misconduct, in that it led him to make improper decisions concerning the entrusted funds. Respondent continues to receive therapy for his depression, which Dr. Burstein described as being in remission, due to respondent's efforts at medication and cognitive therapy. Petitioner's expert, Dr. Robert Wettstein, essentially agreed with this diagnosis, and though he stated that depression does not cause dishonest conduct, he did agree that depression can accentuate underlying personality traits which may lead to dishonest conduct. Dr. Wettstein did not provide testimony which would negate the clear and convincing testimony of Dr. Burstein. The board concludes that respondent met the *Braun* standard by providing clear and convincing evidence that his psychiatric disorder substantially caused his misconduct. Respondent is entitled to mitigation of discipline.

Respondent provided evidence of other mitigating factors. Respondent was experiencing difficult family problems at the time of the misconduct, as well as substantial administrative problems with his office and financial accounts. He has taken appropriate steps to rectify his office problems, such as opening a new trust account and adopting a new way of keeping records in accordance with the Rules of Professional Conduct. Respondent regularly reviews his bank statements and reconciles the statements. He has a new paralegal to assist with office administration. Respondent has no prior history of discipline in his 23 years of legal practice, he enjoys an excellent reputation in the legal community, he expressed sincere remorse and made full restitution.

Review of sanctions imposed in similar cases indicates that suspensions ranging from one year to at least three years have been imposed. In the matter of *Office of Disciplinary Counsel v. Foti,* 89 D.B. 2001, 835 Disciplinary Docket no. 3 (Pa. July 24, 2003), the attorney was suspended for three years after he misappropriated and converted client funds and failed to deliver settlement proceeds to clients. The attorney suffered from depression at the time of the misconduct. In the matter of *In re Anonymous No. 56 D.B. 94,* 28 D.&C.4th 398 (1995), an attorney was suspended for three years after she took monies that were to be deposited into clients' accounts in order to fund her cocaine addiction. This occurred over the course of four years. In the matter of *In re Anonymous No. 66 D.B. 84,* 17 D.&C.4th 414 (1992), an attorney deposited estate funds into a personal account and withdrew the monies to satisfy personal obligations. This attorney suffered from bi-polar disorder. He received a suspension of two and a half years. In the matter of *Office of Disciplinary Counsel v. Durney,* 55 D.B. 2003, 961 Disciplinary Docket no. 3 (Pa. Oct. 15, 2004), the attorney misappropriated funds from an estate. He failed to meet the *Braun* standard, but showed other persuasive mitigating factors. The court suspended this attorney for one year with one year of probation.

Respondent's misappropriation of funds affected not only his clients, but severely impacted the reputation of the legal community as a whole. Considering the gravity of this misconduct in light of the respondent's psychiatric disorder and other mitigating factors, the board is persuaded that a suspension of two years is appropriate and serves to protect the public and maintain the integrity of the disciplinary system.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania recommends that the respondent, Paul Robert Giba, be suspended from the practice of law for a period of two years.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Member O'Connor dissented and would recommend a stayed suspension with a practice monitor and continue treatment.

Board Member Wright did not participate in the January 19, 2005 adjudication.

## ORDER

And now, June 16, 2005, upon consideration of the report and recommendations of the Disciplinary Board dated March 23, 2005, it is hereby ordered that Paul Robert Giba be and he is suspended from the bar of this Commonwealth for a period of two years, and he shall comply with all the provisions of Rule 217, Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.